It is true that these defendants were ignorant, illiterate, and inno-
cent, and they undoubtedly relied upon Frank in what he said and
did.     But the bond and mortgage did not run to him.     These instru-
ments ran to the plaintiffs, and, while the defendant Quattrocchi did
not execute either, and was not a party thereto, yet after the prem-
ises were redeeded to her, and before she made any payments, the
mortgage was recorded, and gave her constructive notice of its ex-
istence and terms, by virtue of the recording acts.     Against this no-
tice ignorance and misrepresentation cannot avail; otherwise it
would amount to a repeal of the acts, and render practically worth-
less securities protected thereby.     In addition to this, there was
notice given that he was or might be acting for another, as he signed
some of the receipts as attorney for the mortgagee.

For these reasons the judgment must be reversed, and a new trial
granted, with costs to abide the final award of costs.     All concur.

(26 App. Div. 416.)

FLYNN v. CONEY ISLAND & B. R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   March 8, 1898.)

1. CORPORATION—MORTGAGE—CREATION OF DEBT.
      Where a corporation executes and delivers a trust mortgage to secure a
   proposed issue of bonds, the mortgage itself does not constitute any debt or
   obligation of the company, but only creates a lien for the security of such
   bonds as may thereafter be issued under it.

2. SAME—RAILROAD CORPORATIONS.
      Section 2 of the "Stock Corporation Law," restricting the amount of cor-
   porate obligations secured by mortgage, is applicable to railroad corporations.

3. SAME—LIMITING MORTGAGE INDEBTEDNESS.
      Section 2 operates to limit corporate mortgages either by the amount of
   the stock or by two-thirds of the value of the property, as such value or
   property exists when the mortgage is executed, and do not warrant the execu-
   tion of a mortgage to secure an issue of bonds in excess thereof, even though
   the excess is not to be actually issued until some future date, and upon a
   further consent of two-thirds of the stockholders.

Appeal from special term.

Action by Patrick H. Flynn against the Coney Island & Brooklyn
Railroad Company and others.     From an order granting an injunc-
tion, defendants appeal.     Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

William N. Dykman, for appellants.
Almet F. Jenks, for respondent.

CULLEN, J.     The plaintiff is one of the defendant's shareholders,
and brings this suit to restrain the company from executing and deliv-
ering a trust mortgage to secure the issue of negotiable bonds to
the amount of $1,500,000.     The capital stock of the defendant is
$1,000,000.     The execution of the mortgage has been assented to by
the owners of more than two-thirds of the capital stock.     The circu-
lar sent by the defendant to its stockholders thus states the necessity

or propriety of the issue of bonds, and the purposes to which those bonds are to be applied:

The bonds will be held for the following purposes by the trustee:

| | |
|---|---|
| To retire outstanding bonds due in 1903 | $  300,000 |
| To retire outstanding certificates of indebtedness | 400,000 |
| There have been sold to pay for extensions and equipment | 150,000 |
| The trustee will hold subject to the order of directors | 150,000 |
| The trustee will hold the balance | 500,000 |
| | $1,500,000 |

The plaintiff attacks the execution of this mortgage as unnecessary and wasteful, and also as in contravention of the statute. The special term upheld both these claims, and granted the injunction sought.

A great part of the assault upon the propriety of executing this mortgage proceeds from what we conceive to be a misconception of the legal effect of the execution and delivery of such an instrument. The mortgage itself does not constitute any debt or obligation of the company, but only creates a lien for the security of such bonds as may thereafter be issued under it. A limit to the amount of bonds to be issued is prescribed by the mortgage. This is requisite, for otherwise no bondholder could know the extent or sufficiency of his security. But the provision for the amount of bonds that may be issued does not create a debt of the company to that extent. The provision for taking care of the $700,000 of the mortgage bonds and certificates of indebtedness maturing July 1, 1903, if not actually necessary from a business point of view, was certainly wise and proper. When those obligations mature, they will have either to be extended or paid off. If extended, then the mortgage which it is now proposed to issue will continue to be only a second lien. If paid off, the money will have to be raised by disposing of second mortgage bonds,—a thing that it may be impracticable to do on favorable terms. The mode adopted by the defendant's directors is that usually taken in the case of consolidated mortgages by railroad corporations. At most, whether it was the better plan or not was a question to be decided by the directors and stockholders of the company; and with the exercise of their judgment, made in good faith, we cannot interfere. The provision does not increase the charges against the corporation a single dollar, either for principal or interest. The sum of $150,000 for extension and equipment is not attacked. The propriety of borrowing this sum is conceded. There was, at least, a probability (a probability which has now been realized) of the extension of the defendant's railroad across the bridge, for which the second sum of $150,000 was provided. As for the $500,000, no plan whatever for its use has been formulated; but the issue was authorized in contemplation of possible future contingencies which might require borrowing that sum. The learned special term held that the provision for the issue of bonds for these two last amounts was unauthorized, as no present necessity existed for the use of the money.

We agree with the special term that the borrowing of large sums by the defendant, for which it had no immediate use, or the possibility of whose use was wholly speculative and contingent, would be wasteful and improper. But the whole assault from this point of

view on the defendant's action proceeds on the erroneous theory that the execution of the mortgage itself constitutes a borrowing of money. The learned counsel for the respondent gravely argues that the defendant would be obliged to pay the interest on the $500,000 of bonds, unexecuted and in the hands of the trustee. Surely, this notion is wholly fanciful. The mortgage guards the issue of this portion of the bonds by providing that they shall not be certified by the trustee except on the written request of two-thirds in amount of the stockholders. It will thus be seen that none of this money is to be borrowed unless the future requirements of the company demand it. Practically, the only effect of this provision for the subsequent issue of bonds is to enable the holders of such bonds, when issued, to share equally with the holders of the bonds now issued in the security of the present mortgage, instead of relegating the purchasers of the new bonds to a second and subordinate lien. It is the same as if the present mortgage, instead of securing $1,500,000 of bonds, should secure only $1,000,000, and provide that any mortgage hereafter executed by the defendant to the amount of $500,000 should share equally in the security of the defendant's road and property, and its lien be equal with, and not subordinate to, the lien of the present mortgage.

We think, however, that, on the papers now before us, a mortgage cannot be issued to the amount specified. We are of opinion that section 2 of the stock corporation law applies to railroad corporations, and that a mortgage must be limited either by the amount of the capital stock, or by two-thirds of the value of the property of the corporation, if that be greater than the capital stock. The affidavits for the defendant show the value of the defendant's property, including franchises, to be about $2,100,000, two-thirds of which amount would be less than that of the proposed mortgage. It is true that $500,000 of the bonds are to be issued in the future, and it may be that, when issued, the capital stock of the corporation, or the value of its property, may have been so increased as to authorize a mortgage for even a greater amount than that now sought to be issued. But the difficulty is that the present mortgage authorizes the issue of bonds on the assent of two-thirds in amount of the stockholders, without reference to the amount of the capital stock of the company, or the value of its property; and we are not prepared to say that any provision in the mortgage limiting the subsequent issue of bonds could relieve the defendant from the statutory limitation. We think that the amount of the mortgage cannot exceed two-thirds of the value of the property, or the amount of the capital stock, as they exist at the time of the execution of the mortgage. It is stated on the argument that the real value of the defendant's property is far more than sufficient to justify the amount of the mortgage. If this be the fact, it may be proved on the trial; but, on the papers before the special term, the order was justified.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.